WM. C. BRYAN *v.* C. H. FOWLER and others.

Plaintiff sent his cotton to defendants' gin house to be ginned; while there, the gin with all the cotton in it was consumed, it not appearing how the fire originated: *Held,* that the destruction of the cotton by fire was not *prima facie* evidence of negligence; and further, it being shown that the defendants during the possession of the plaintiff's cotton used ordinary care, they are not liable for its loss.

(*Heathcock* v. *Pennington,* 11 Ired. 640; *Ellis* v. *Portsmouth & Roanoke Railroad Co.,* 2 Ired 138, *Herring* v. *Wil. & Ral. Railroad Co.,* 10 Ired. 402; *Scott* v. *Wil. & Ral. Railroad Co.,* 4 Jones, 432; *Chaffin* v. *Lawrence,* 5 Jones, 179; *Smith* v. *N. C. Railroad Co.,* 64 N. C. Rep. 235, cited, commented on and approved.)

CIVIL ACTION, for damages arising from burning plaintiff's cotton, tried before his Honor, *Judge Clarke,* at the Fall Term, 1873, of PAMLICO Superior Court.

All the facts necessary for an understanding of the case as decided, are fully set out in the opinion of the Court.

The jury returned a verdict for the defendants. Judgment in accordance therewith and appeal by the plaintiff.

*Haughton*, for appellant.
*Seymour*, contra.

READE, J. The plaintiff stored his seed cotton in the gin house of the defendants, to be by them ginned at a convenient time, and the gin house and cotton were destroyed by fire. This was a bailment for the mutual benefit of bailor and bailee, and the liability of the bailee is for ordinary care. 2 Parson on Con., p. 139.

Ordinary care is that degree of it which an ordinarily prudent person would take of his own. *Heathcock* v. *Pennington*, 11 Ire. 640.

It did not appear how the fire originated or what was the cause of it, and the plaintiff insists that proof of the destruction of the cotton by fire is *prima facie* evidence of negligence. The principal authority relied on for that position is *Ellis* v. *Portsmouth and Roanoke R. R. Co.*, 2 Ire. 138. In that case the plaintiff proved that his fence was fifty feet from the railroad and that sparks from the engine set it on fire; and that although it had been there for a long time it had never caught fire before, and that the engine usually had a spark catcher, but it did not appear whether it had one on that day. There was no other evidence by the plaintiff, and the defendant offered none. It was held to be *prima facie* negligence. Of course it was. There was the plain fact that the defendant had set fire to the plaintiff's fence, which the prudent use of his engine had never fired before. That made it necessary for the defendant to show that he had used the same care on that day as had been used theretofore. If he had proved that the engine was supplied with a spark catcher and that the usual care was used, the decision would have been the other way. Judge GASTON, delivering the opinion, says, " We think, therefore, that the instruction asked for by the defendant was abstractly cor-

rect, viz : that the Company are not liable for an injury like that complained of, if they use all the care to prevent it which the nature of their business allows ; but we also think, that as no evidence was offered to show what care they did use, there was no foundation laid for asking the instruction." It is plain, therefore, that in that case the decision was against the defendant, because he did not show that the usual care was used. That case was reviewed in *Herring* v. *Wilmington & Raleigh R. R. Co.*, 10 Ire. 402, where the engine ran over a slave who was asleep upon the track. The plaintiff proved the injury in this as in the fence case, and yet the Court said, "In this case the cars had been running for years without injuring a slave, because no slave had fallen asleep upon the track. That was itself an unusual circumstance and repels any inference of negligence from the mere fact that damaage was done, and therein this case differs from the cases of the fence and the house, which had remained stationary." Both the foregoing cases are again reviewed in *Scott.* v. *W. & R. R. R. Co.*, 4 Jones 482, and *Chaffin* v. *Lawrence*, 5 Jones 179, in which the distinction is drawn between injuries to things remaining under the same circumstances inanimate and stationary and things having volition and locomotion. In the latter cases, negligence is not inferred from the fact of injury, but negligence must be proved by the plaintiff who alleges it. And this is the general rule. *Smith* v. *N. C. R. R. Co.*, 64 N. C. R. 235.

It remains now to apply these principles to the case before us. This case differs from all the cases cited in this : in the cases cited it was proved that the defendant did the act complained of ; in this case it does not appear who did it, or how it originated. At one o'clock in the day, when the gin was running, and all the hands present, the cotton in the press, in the gin house, was discovered to be on fire, and immediately caught in the lint room, and, being very inflamable, almost like powder, it was impossible to extinguish it. And now the plaintiff insists, that inasmuch as the gin house had been in operation for a considerable time, and under the same circum-

stances, and was stationery, and had never burned down before, like the fence case, it makes a *prima facie* case ; first, that the defendant burned it, and second, that he did it negligently, without allowing any force to the fact that it was his own gin house that was burned. When we hear that a man's house has been burned, by which he suffers loss, the inference is that he did not burn it, but that it was the result of accident, or the work of an incendiary. And it is hard to believe that he did not use ordinary care of his own. But grant that the fence case applies, and that it was incumbent on the defendant to show that he did use ordinary care; then it appears that he did show it. He proved that it was general orders, that " no fire, pipes or matches " were to be allowed in the gin house, and that none were used. What more could he prove? The only fact relied on by the plaintiff, other than the fact of burning, was that sometimes the hands working about the cotton would go into the engine house to warm, with lint cotton on their clothes, and the engineer, as a precautionary measure, would singe it off.

The hand that attended the lint room says, that on the day of the fire he went to work at 6 o'clock in the morning, and about 7 o'clock he went into the engine room, and was singed off. That he stayed out about a quarter of an hour and then went back to his work. There was no evidence that any fire remained on him. If it had, and he had set fire to the lint cotton, it would have flashed immediately. Yet the hands all went to dinner at twelve, and remained away until one o'clock, and after they returned at one, this hand did not go into the lint room, nor up stairs where the lint room was, as the superintendent proved. The only hand that did go up stairs was the hand that attended the gin. The first he saw of the fire it was in the lint room, and it spread so rapidly that he had to run to save himself.

The engineer said that he stayed to watch while the hands went to dinner; and that after they came back he first discovered the fire in the press, and he immediately ran up stairs and

found the whole upper floor in flames. If therefore it was negligence to singe the cotton off the hands, yet as the fire did not originate in that way, it amounts to nothing in this case.

From all the testimony, it is a mystery how the fire occurred. Take it that the fact of burning made a case of *prima facie* negligence so as to put it upon the defendant to show proper and usual care, still we think he did prove due care.

The evidence raises some suspicion that a friction match may have been carried to the gin house, in seed cotton, as hands picking out cotton are known to use matches in the fields. And there was some probability that the seed cotton in the gin house took fire spontaneously; as it is known that greasy cotton is liable to spontaneous combustion, and mashing the seed will grease the cotton.

But however this may be, there is no evidence of negligence against the defendant, except the fact of the fire, and *that* he he has met by showing, that the usual and proper care was used.

Negligence being a question of law, and we being of opinion that there was no negligence, and the jury having found rightly for the defendant, it is not necessary that we should notice in detail the prayers for instructions, and the exceptions to his Honor's charge, because whatever errors he may have committed, and we do not say that he committed any, the verdict is right, and that is enough. *Chaffin* v. *Lawrence,* 5 Jones. 179.

No error.

PER CURIAM.               Judgment affirmed.