# Bridget Welch, Appellee, v. New Harper Hotel Company and Memie DeSilva, Appellants.

## Gen. No. 6,018.

1. NEGLIGENCE, § 142*—*what is doctrine of res ipsa loquitur.* Where a thing which is alleged to have been the cause of an accident is shown to have been under the management of defendant or his servants, and the accident is one which in the ordinary course of things does not happen when those having the management of the thing use proper care, it affords reasonable evidence, in the absence of explanation by defendant, that the accident arose from want of care.

2. NEGLIGENCE, § 142*—*when doctrine of res ipsa loquitur inapplicable.* The rule of *res ipsa loquitur* has no application to a case where the thing alleged to have been the cause of an accident does not require direction or management in its operation and use, such as, for example, an electrical appliance used to furnish power for elevators, which appliance is stationary, and works automatically without manipulation and without the need of an interposing or independent agency to direct the performance of its functions.

3. NEGLIGENCE, § 140*—*when burden of proof on plaintiff to sustain charge of negligence.* Where an action is based on specific charges of negligence, plaintiff has the burden of proving such specific charges as laid.

4. MASTER AND SERVANT, § 584*—*when no presumption of negligence arises from occurrence of fire.* In an action by a servant to recover for personal injuries due to a fire alleged to have been started as a result of defendant's negligence, the fact that a fire occurred whereby plaintiff was injured raises no presumption of negligence.

5. MASTER AND SERVANT, § 687*—*when evidence insufficient to establish application of doctrine of res ipsa loquitur.* In an action to recover for personal injuries sustained as a result of a fire which was alleged to be due to the negligence of defendant, where plaintiff invoked the rule of *res ipsa loquitur*, evidence *held* to have no tendency to show that the accident was due to the "management" of defendant or its servants even though the word "management" used in the rule invoked can be construed as having the same meaning as "use," where the thing from which the fire in question was alleged to have originated was an electrical appliance used to furnish power for elevators, which worked automatically and without manipulation, as it is clear that such appliance in the ordinary course of its use by defendant would not be likely to cause a fire.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Welch v. New Harper Hotel Co. et al., 196 Ill. App. 94.

6. Master and servant, § 687*—*when evidence sufficient to repel presumption that use of elevator power furnishing appliance involved danger from fire.* In an action to recover for personal injuries sustained as a result of a fire alleged to be due to defendant's negligence, where plaintiff invoked the rule of *res ipsa loquitur,* and where the fire was alleged to have originated from an electrical appliance used to furnish power for elevators, and which worked automatically without manipulation or management by defendant or its servants, evidence that such appliance had been in daily and safe use for ten years *held* to repel any just assumption that the use of such appliance involved danger from fire.

7. Master and servant, § 687*—*when evidence insufficient to establish negligence in management or construction of elevator power furnishing appliance.* In an action by a servant to recover for personal injuries sustained as a result of a fire alleged to have been due to defendant's negligence, where the specific facts relied on as proving negligence were the improper management and construction of an electrical appliance used to furnish power to elevators, from which the fire was alleged to have originated, evidence *held* insufficient to prove negligence, there being no evidence of improper construction of such appliance, or that the fire was caused thereby, and it appearing that such appliance worked automatically, without management by defendant.

8. Master and servant, § 699*—*when evidence sufficient to sustain finding of contributory negligence in failing to escape from burning building.* In an action by a servant to recover for personal injuries as the result of a fire alleged to have been caused by the negligence of defendant, where the fire occurred in a hotel belonging to defendant wherein plaintiff was employed as a chambermaid, evidence *held* conclusively to show a want of due care for her own safety on the part of plaintiff, where it appeared that plaintiff had ample time and opportunity to escape after the commencement of the fire in question, but, although urged to do so, plaintiff made no effort to escape until the flames reached the place where she persisted in remaining.

9. Negligence, § 66*—*what constitutes contributory negligence.* One who voluntarily exposes himself to a danger of which he has knowledge, or who fails to exercise ordinary precautions to avoid such danger, thereby bars a recovery for injuries resulting therefrom.

Appeal from the Circuit Court of Rock Island county; the Hon. Robert W. Olmstead, Judge, presiding. Heard in this court at the October term, 1914. Reversed with finding of facts. Opinion filed September 13, 1915.

## Searle & Marshall, for appellants.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Murphy & Larson and J. T. & S. R. Kenworthy, for appellee.

Mr. Justice Niehaus delivered the opinion of the court.

In this case the appellee, Bridget Welch, sued the appellants, the New Harper Hotel Company and Memie DeSilva, the owner of the hotel building, in the Circuit Court of Rock Island county, to recover damages for injuries suffered by her as the result of a fire which took place in the hotel on December 10, 1910.

The fire originated in the attic of the hotel about noon on the day mentioned. In this attic an electrical appliance and equipment had been installed and was in use for the purpose of running a passenger elevator. It had been placed on a platform built of wood and supported by wooden timbers, and was located at the top of the elevator shaft, about six or eight feet above the floor of the attic. The appellee was employed in the hotel by the Hotel Company as a chambermaid, and at the time of the fire was pursuing her employment on the fifth floor, which is immediately under the attic floor.

There is a hallway running through the center of the main wing of the hotel, and the elevator is situated about one-third of the way from one end of this hallway, where another hallway branches off at right angles. This hallway which branches off runs through the center of the other wing of the hotel and at the end of it there is a stairway leading down to the floors below. There is also a stairway leading to the floor below directly opposite the elevator.

The fire was first noticed by one of the chambermaids in the hotel, and she gave the alarm and called the appellee, who came to the elevator. The appellee noticed the fire, which at that time was in the attic and apparently near the top of the elevator shaft, and the shaft appeared to be on fire near the top, also the floor

of the attic near the shaft. The appellee thereupon got her clothes out of the "pantry," which was near the elevator shaft, and took them down the hall into a room situated at the far end of the hallway, and away from the elevator and stairway. She claims that when she came out of this room, which she says was room 71, the hallway had become filled with smoke, and she had to grope along the hallway in trying to escape through the smoke, and in that way she must have come in contact with the flames, which by that time had reached down the elevator shaft to the fifth floor. She was severely burned about the face and hands, wrists and arms, and elbow, and some permanent scars and injuries resulted therefrom.

The electrical appliance and equipment mentioned was a motor with connecting wires carrying a 500-volt direct current of electricity, and a ground return. It had been installed in the hotel about ten years before the fire and had been in daily use during all that time. It was the kind of appliance and equipment that was in general use at the time it was installed, and was then used in most of the larger buildings, public and private, in and about the City of Rock Island and adjoining cities.

The declaration consisted of three additional counts filed by the appellee, the original count having been eliminated from the case by a demurer, which had been confessed by the appellee and sustained by the court. Each of the additional counts contained a distinctive charge of negligence and an averment of due care on the part of the appellee.

The first count charges: "That the defendants so recklessly, negligently and unskillfully managed the said machinery and electrical equipment erected at the top of said elevator shaft that the same became ignited and set fire to the portion of said building surrounding said elevator shaft."

The second count charges: "That said elevator and said electrical devices and equipments had been changed, remodeled and repaired and installed by the said defendants acting jointly shortly before the day last aforesaid, and that in so remodeling and repairing said electrical devices and equipments, the said defendants made use of and installed on the inside of said building, and close to and around a certain elevator shaft in the front part of said building, a large number of wires for the purpose of carrying the electricity, and it then and there became and was the duty of the said defendants to properly insulate and protect said wires and take all reasonable precaution to keep the said wires properly insulated and guarded while so used with the electrical current as aforesaid, and that the defendants did not take reasonable precaution to guard said wires, and did not keep and maintain said wires properly insulated."

The third count charges: "That the fuse connecting up the said elevator machinery with the electrical current had burned out, and that it was the duty of the defendants to replace said fuse with another safe and approved inclosed fuse; that the defendants neglected to do this, but connected up the said machinery with said current with a piece of wire or other metal, which rendered said electrical machinery and equipment unsafe and liable to be excessively charged with electrical current."

The appellants filed a plea of the general issue to these three counts, and upon issue joined, a trial by jury was had, which resulted in a verdict finding the appellants guilty, and assessing appellee's damages at $4,500. The appellants made a motion to set aside the verdict and for a new trial, which was overruled by the court, and a judgment was rendered upon the verdict. The case was then brought to this court on appeal. Two questions appear to stand out prominently for consideration in review of this case, namely,

whether or not there is any evidence to sustain the charges of negligence in the declaration, and whether or not the injuries sustained by appellee were occasioned by her own lack of care and caution.

On the question of the proof of negligence it is insisted by appellee that the rule of *res ipsa loquitur* applies. This rule has been tersely defined as follows: "Where the thing is shown to be under the management of the defendant, or his servants, and the accident is such as in the ordinary course of things does not happen, if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from want of care." *Scott v. London Docks Co.,* 3 Hurl. & Colt. 596.

The electrical appliance and equipment in use in the hotel consisted of a motor and connecting wires. There was no management required in its use. It was stationary, and acted automatically without manipulation. The application of an interposing or independent agency was not needed to direct the performance of its function, which was to furnish the power to run the elevator of the hotel. Where the apparatus is one that does not require direction or management in its operation and use, as in this case, it is evident that the rule of *res ipsa loquitur* can have no application. And we are unable to perceive anything in the nature of this case which would take it out of the general and well-established rule that where a plaintiff bases a right of recovery upon specific charges of negligence, which are set out in the declaration, such specific charges must be proved as laid; and the burden of proof is upon the plaintiff. (*Ebsery v. Chicago City Ry. Co.,* 164 Ill. 518; *La Salle County Carbon Coal Co. v. Eastman,* 99 Ill. App. 495; *Geraghty v. William Grace Co.,* 157 Ill. App. 309.)

If the electrical appliance in question set fire to the hotel, it is clear that it was not in consequence of any

management or manipulation on the part of the appellants or their servants. If, however, the term "management" could be construed to have the same meaning as the "use" of the appliance and equipment, it is just as clear that this appliance and equipment, in the ordinary course of its use by the appellants, would not likely cause a fire. The fact that it had been in daily and safe use in the hotel for as long a period as ten years would of itself do away with any just assumption that there was any fire danger from its use. And there is no proof that the electrical appliance caused the fire. The fact that a fire occurred would not of itself raise any presumption of negligence. (*Bryan v. Fowler,* 70 N. C. 596.)

There is no evidence in the record of the negligence charged in the first count of the declaration, nor is there any evidence to show that the electrical devices or equipment in question were out of repair, or that the wires, which were a part of the equipment, were not properly insulated and guarded, as charged in the second count of the declaration. And we find no evidence to show that a fuse connecting the electrical machinery with the electrical current used had been burned out, and had been replaced by a piece of wire or other metal instead of another safe and approved fuse, as charged in the third count of the declaration. None of the allegations of negligence made in the three counts of the declaration are proved, and hence there is no evidence to sustain the verdict or the judgment.

On the question of lack of due care and caution on the part of appellee for her own safety, the evidence is conclusive. It is clear that she had ample time and opportunity to get away from the fire in safety, but that she persisted in remaining in the proximity of the danger, and in spite of repeated warnings and entreaties to come away she voluntarily remained on the scene, and not until the spreading flames and smoke came down the hallway of the fifth floor did she make any

effort to escape. She admits, in her own testimony, that after her attention had been called to the fire she could have gone away from it with perfect safety. Her testimony on that point on page 23 of the abstract, is as follows:

"X. Q. Was there anything to hinder you then from walking right down that stairway?

"A. No more than the other stairway, but I went to 71.

"X. Q. Just answer the question. Was there anything to prevent you after you got your clothes, from walking to the west end of this hallway and going down that stairway?

"A. No, sir.

"X. Q. And you could have gone out that way at that time in perfect safety, couldn't you?

"A. Yes."

It was her duty to look out for her safety, and to withdraw from the danger as soon as she had knowledge of it; and if she failed to do so, and voluntarily continued to expose herself to such danger, she did so at her own risk. Having been injured because of her own neglect, she has no one to blame but herself. One who voluntarily exposes himself to a danger of which he has knowledge, or fails to exercise ordinary precautions, thereby bars a recovery. (*Chicago & E. I. Ry. Co. v. McKnight,* 16 Ill. App. 596; *Schoeler v. City of Rockford,* 160 Ill. App. 224.)

The judgment in this case is therefore reversed.

*Reversed with finding of facts.*

Finding of facts to be incorporated in the judgment.

We find from the evidence that appellant is not guilty of the negligence charged in the declaration, and that appellee was injured because of her own lack of due care for her own safety; and that appellee has no cause of action against appellant for the injuries alleged in the declaration.