***********
The Full Commission has reviewed the Deputy Commissioner's Decision and Award based on the record of the proceedings before the Deputy Commissioner. The appealing party has shown good grounds to reconsider the evidence and having reviewed the competent evidence of record, the Full Commission hereby reverses the Decision and Award of the Deputy Commissioner.
 ***********
The Full Commission accepts as fact the following which were entered into by the parties at the deputy commissioner hearing and in the pre-trial agreement as:
 STIPULATIONS
1. All parties are properly before the Commission and the Commission has jurisdiction over the parties and the subject matter of this case.
The parties are correctly designated and there is no question of misjoinder or nonjoinder.
The parties also stipulate and agree to the following undisputed facts:
The date of the accident alleged by plaintiff is July 9, 1998.
At the time, the plaintiff lost control of the automobile she was driving on or around RP 1238, Franklin County, North Carolina.
 ***********
At the deputy commissioner hearing, the Deputy Commissioner received the following as documentary
 EXHIBITS
1. Employment records were marked as plaintiff's exhibit 1 and received into evidence.
2. Medical records from Duke Hospital were marked as plaintiff's exhibit 2 and received into evidence.
3. Private Diagnostic Clinic medical records are marked as plaintiff's exhibit 3 and received into evidence.
4. Dental records marked as plaintiff's exhibit 4 and received into evidence.
5. Photographs were marked as plaintiff's exhibit 5 and received into evidence.
6. An accident report marked as defendant's exhibit 1 and received into evidence.
 ***********
Based upon all of the competent evidence adduced from the record, the Full Commission makes the following additional
 FINDINGS OF FACT
1. This case involves a single motor vehicle accident on Breedlove Road, a rural road with two lanes, one in each direction. The speed limit in the area was 55 miles per hour. On July 9, 1998, plaintiff was driving on Breedlove Road when she lost control of her vehicle, crossed from her lane of travel into the left hand lane, exited the road on the left hand side of the road, then proceeded back to her right across the road, and finally left the road on the right hand side, where her vehicle struck a well house and a tree. Highway Patrol and emergency medical services were dispatched, and plaintiff was taken to the hospital.
2. Two days prior to July 9, 1998, the North Carolina Department of Transportation (DOT) had conducted a skin patch operation on portions of Breedlove Road. In this operation, DOT employees sprayed tar on the road, laid gravel over the tar, and rolled the gravel into the tar with a street roller. DOT placed "loose gravel" signs at each end of Breedlove Road near the location of the patching operation.
3. Plaintiff testified that she was driving home from a friend's house and wanted to stop by her mother's house on the way before it became dark. The road was dry. It was getting dark. She came around a curve just before the area where she lost control of her vehicle. Plaintiff testified that she was not speeding at the time of the accident, that there was gravel on the road, and that she lost control of her vehicle. She waffled in her testimony regarding the presence of gravel on the road and when she realized that there was gravel in that area. She said that she saw the gravel before she hit it, then said that it was dark and the accident happened three years ago and referred to the fact that one could "now" still see the graveled area. She also testified that she did not realize that it was gravel until she was on it and that she felt the vibration from the gravel (which the Commission finds could just as likely have been rocks, gravel, and the like on the shoulder of the road where she crossed over the other lane of travel). Plaintiff did not remember the details of the accident and, in particular, did not remember crossing over into the left lane and off the side of the road. Her testimony does not show that there was excessive gravel on the road or that a "loose gravel" sign would have prevented the accident.
4. Plaintiff offered the testimony of Christopher Wilson to show that the accident was caused by loose gravel on the road and that there were no posted signs warning of loose gravel. At the time of the accident, Mr. Wilson was fifteen or sixteen years old. At one point he stated that he did not see anyone during the patching operation, but then stated that he did and that no warning signs were placed in the area. He testified that plaintiff's vehicle ran off the road when she hit the gravel. Mr. Wilson did not state his observations to the investigating officer even though he had an opportunity to do so. It was at least two months later when he discussed the accident with plaintiff when plaintiff was visiting his mother. Although Mr. Wilson testified that he believed that the cause of the accident was the gravel which caused plaintiff's vehicle to slide, he was not an experienced driver and did not have any idea as to the speed of the vehicle. His observations differ from those of the investigating office. His testimony on causation is given little weight.
5. Alton Parrish was the crew leader for the Franklin County Department of Transportation, which performed the patching operation. Mr. Parrish testified that the patching job was started and finished on July 7, 1998, and then the crew moved on to other jobs. Mr. Parrish explained that the patching operation consisted of spraying a tar-like substance on which small fingernail sized stone was spread. The stone was then sealed in place by rolling with a street roller. In order to reduce the spread of tar to the vehicles traveling over the new surface, more stone was placed on the surface than would adhere to the tar. Mr. Parrish explained that the excess stone would generally be removed by passing traffic within one day, and would be off the road in two days. Mr. Parrish placed two "loose gravel" signs at the site, one at each end of the new surface. It was DOT's practice to use "loose gravel" signs at the location of these operations, and Mr. Parrish testified that he believed that the signs initially were used to warn travelers of loose gravel that could break windshields. The signs were still used even though, within the last couple of years, DOT had begun using smaller gravel that was not likely to cause windshield damage. Mr. Parrish indicated that the "loose gravel" signs are generally posted for two or three days. He did not tell anyone to remove the "loose gravel" signs and did not believe that anyone from his crew removed the signs because they were working in another part of Franklin County after performing this work. The Commission finds that DOT likely removed the signs within the two-day period before plaintiff's accident.
6. Scott Capps is a Deputy Commissioner with the North Carolina Department of Transportation. He testified that the Manual of Uniform Traffic Control Devices does not require "loose gravel" signs. Mr. Capps testified that the manner of performing the patching operation and the placement of "loose gravel" signs was consistent with State policies, and that Mr. Parrish did not violate any policy in regard to the project in question. Mr. Capps also explained that the "loose gravel" signs had been used when the State used a larger gravel that could cause windshield damage, and that the signs continued to be used at this time even though the gravel no longer posed this risk. Neither the interests of public safety nor DOT regulations required the use of loose gravel signs.
7. Clifford Adams was the State Trooper who investigated the accident. Trooper Adams had been in the Highway Patrol for over fourteen years and had investigated thousands of accidents. Upon his arrival at the accident scene, Trooper Adams took measurements of track marks and spoke with plaintiff. No one came forward as a witness. Trooper Adams concluded that plaintiff was traveling about 55 miles per hour when she left the road on the left side and ultimately came to a rest some 214 feet later when her car went through a well house and struck a tree on the right side of the road. Plaintiff told Trooper Adams that she did not know how the accident happened, but plaintiff was disoriented at the time. Although he spent significant time at the scene, Trooper Adams did not record any problems with the road which in his opinion contributed to the accident. He testified that, during investigations, he would make a notation in his record of any water, ice, gravel or other conditions, which could have contributed to the accident. Trooper Adams attributed the accident to driving in an improper lane, traveling at an excessive speed, and failing to reduce speed. Trooper Adams did not witness the accident taking place, nor was he testifying as an expert witness. His estimate of plaintiff's speed is an estimate only. His observations of the road conditions at the scene, however, are afforded great weight.
8. The greater weight of the evidence fails to show that plaintiff was injured by the negligence of defendant or its named employee. First, there is insufficient evidence of defendant's negligence in putting extra gravel on the tar (or that excessive gravel was used). There are no photographs, measurements, or other testimony except that of Christopher Wilson, who stated that there was gravel "all over the road." The investigating officer, however, did not observe any, and plaintiff's testimony is not persuasive on this issue. Second, there is insufficient evidence of defendant's negligence in not rechecking the site after completion of the job, in order to ascertain that extra loose gravel had in fact been knocked off the road by traveling vehicles as anticipated. Third, Mr. Parrish, who is found credible, specifically remembered personally placing loose gravel signs in the appropriate locations at the site, and there is insufficient evidence of defendant's negligence in removing the signs within two days of the patching job. Fourth, the evidence failed to show that the absence of warning signs constituted negligence or was a proximate cause of the accident. Plaintiff offered insufficient evidence concerning a legal duty to have signs in place at the time of the accident and did not show how the signs could have or would have prevented the accident. The signs are not required by the Manual on Uniform Traffic Control Devices. In addition, the alleged failure to have signs in place is irrelevant absent evidence that the accident was caused by loose gravel.
9. The greater weight of the evidence is that plaintiff was in a hurry, traveling in the dark, and was not very familiar with the road. Although some loose gravel was likely on the road from the patching job, the greater weight of the evidence fails to establish that defendant's negligence, as opposed to driver error, was the cause of plaintiff's accident.
 ***********
Based upon the foregoing findings of facts, the Full Commission makes the following
 CONCLUSION OF LAW
Plaintiff has failed to establish that the motor vehicle accident in which she was injured was proximately caused by the negligence of defendant or its employees or agents. G.S. § 143-291. Negligence is not to be inferred from the fact of injury. Bryan v. Fowler, 70 N.C. 596
(1874).
 *********** ORDER
1. Plaintiff's claim for damages against defendant is DENIED.
Each party shall bear its own costs.
 S/_______________ RENEE C. RIGGSBEE COMMISSIONER
CONCURRING:
 S/_______________ DIANNE C. SELLERS COMMISSIONER
DISSENTING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER